**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| EDWARD FITZGERALD,<br><br>                              Plaintiff,<br><br>     -against-<br><br>THE CITY OF ROCHESTER, "JOHN DOE POLICE OFFICERS "1–200", (names and number of whom are unknown at present), PAUL ROMANO, COUNTY OF MONROE, TODD BAXTER, "RICHARD ROE SHERIFF'S DEPUTIES 1-200" (names and number of whom are unknown at present), and other unidentified members of the Rochester Police Department and Monroe County Sheriff's Office,<br><br>                              Defendants. | Case No. 22-cv-6067 |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS THE COMPLAINT ON BEHALF OF THE COUNTY OF MONROE, SHERIFF TODD BAXTER, AND RICHARD ROE SHERIFF'S DEPUTIES**

**John P. Bringewatt, Monroe County Attorney**
Maria E. Rodi
Adam M. Clark
Deputy County Attorneys
307 County Office Building, 39 W. Main Street
Rochester, New York 14614
585.753.1495
mariarodi@monroecounty.gov

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................. iii

PRELIMINARY STATEMENT .......................................................................1

THE PLEADINGS...........................................................................................1

ARGUMENT .................................................................................................. 3

I. Standard For Dismissal Pursuant To Fed. R. Civ. P. 12(b)(6) ................................. 3

II. Second Claim for Relief – Municipal Liability Against the County
     And Sheriff Baxter...................................................................................4

     A. Failure to Plead Policy or Custom .............................................................5

     B. Failure to Plead "Failure to Train" Claim ...................................................7

III. Third Claim for Relief – §1983 Excessive Force ...................................................... 9

IV. Fourth Claim for Relief – Assault and Battery............................................ 11

V. Fifth Claim for Relief – §1983 First Amendment........................................ 12

VI. Sixth Claim for Relief – §1983 Failure to Intervene .................................. 14

VII. Seventh Claim for Relief – Negligent Training,
       Supervision, and Discipline .........................................................................15

VIII. Eighth Claim for Relief – Negligent Planning of Protest Response ........................17

IX. Eleventh Claim for Relief – Negligence .................................................19

CONCLUSION ................................................................................................21

# TABLE OF AUTHORITIES

**Cases**

*Adamou v. Cty. of Spotsylvania, Virginia*, No. 12-cv-7789,
2016 WL 1064608 (S.D.N.Y. Mar. 14, 2016) ...................................................10

*Anderson v. Branen*, 17 F.3d 552 (2d Cir. 1994)................................................14

*Applewhite v. Accuhealth, Inc.*, 21 N.Y.3d 420 (2013) ........................................18, 19, 20

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................3, 21

*Atuahene v. City of Hartford*, 10 Fed.Appx. 33 (2d Cir. 2001)....................................9, 11

*Avgerinos v. Palmyra-Macedon Cent. Sch. Dist.,*
690 F.Supp.2d 115 (W.D.N.Y. 2010).....................................................................5

*Barr v. Albany County*, 50 N.Y.2d 247 (1980)....................................................16

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ........................................................3, 21

*Boyler v. City of Lackawanna*, 287 F.Supp.3d 308 (W.D.N.Y. 2018)
aff'd, 765 F. App'x 493 (2d Cir. 2019)..................................................................11

*Brinn v. Syosset Pub. Libr.*, 624 F.App'x 47 (2d Cir. 2015) (summary order) ................12

*Bryant v. Ciminelli*, 267 F.Supp.3d 467 (W.D.N.Y. 2017) ...................................18, 19, 20

*Case v. City of New York*, 233 F.Supp.3d 372 (S.D.N.Y. 2017) .....................................14

*Cavico v. Steuben Cty. Jail,* 18-cv-6329,
2018 WL 11317396 (W.D.N.Y. Aug. 27, 2018) .................................................4

*Chambers v. Time Warner, Inc.,* 282 F.3d 147 (2d Cir. 2002)...........................................5

*Clayton v. City of Poughkeepsie*, 06-cv-4881,
2007 WL 2154196 (S.D.N.Y. June 21, 2007) ...................................................19

*Colombo v. O'Connell,* 310 F.3d 115 (2d Cir. 2002) .......................................................12

*Connick v. Thompson,* 563 U.S. 51 (2011) ...............................................................5, 7, 8

*De Ratafia v. Cty. of Columbia*, 13-cv-174,
2013 WL 5423871 (N.D.N.Y. Sept. 26, 2013) ..................................................11

*Dorsett v. Cty. of Nassau*, 732 F.3d 157 (2d Cir. 2013) ....................................................13

*Edrei v. City of New York*, 254 F.Supp.3d 565 (S.D.N.Y. 2017),
aff'd sub nom. *Edrei v. Maguire*, 892 F.3d 525 (2d Cir. 2018)............................16, 19, 20

*Friedl v. City of New York*, 210 F.3d 79 (2d Cir. 2000) ................................................... 13

*Giraldo v. Kessler*, 694 F.3d 161 (2d Cir. 2012) ............................................................... 6

*Girard v. Howard*, 19-cv-673S, 2021 WL 1737758 (W.D.N.Y. May 3, 2021) .............. 15

*Graham v. City of New York*, 928 F.Supp.2d 610 (E.D.N.Y. 2013)................................ 11

*Hemphill v. Schott*, 141 F.3d 412 (2d Cir. 1998) ................................................................. 9

*Houghton v. Cardone*, 295 F.Supp.2d 268 (W.D.N.Y. 2003) .......................................... 3

*Humphrey v. Landers*, 344 Fed.App'x. 686 (2d Cir. 2009)............................................. 11

*Jeffes v. Barnes*, 208 F.3d 49 (2d Cir. 2000) ..................................................................... 6

*Jones v. Parmley*, 465 F.3d 46 (2d Cir. 2006) ................................................................... 9

*Kuczinski v. City of New York*, 352 F.Supp.3d 314 (S.D.N.Y. 2019).............................. 13

*Lamb v. Baker*, 152 A.D.3d 1230 (4th Dept. 2017).......................................................... 16

*Leneau v. Ponte*, No. 16-CV-776-GHW,
2018 WL 566456 (S.D.N.Y. Jan. 25, 2018) ....................................................................... 9

*Lin v. Cty. of Monroe*, 66 F.Supp.3d 341 (W.D.N.Y. 2014)............................................. 11

*Lombard v. Booz-Allen & Hamilton, Inc.,* 280 F.3d 209 (2d Cir. 2002) ......................... 20

*MacPherson v. Town of Southampton*, 738 F.Supp.2d 353 (E.D.N.Y. 2010) ................. 13

*McLean v. City of New York*, 12 N.Y.3d 194 (2009).......................................... 18, 19, 20

*Miller v. Sanilac County*, 606 F.3d 240 (6th Cir. 2010) .................................................... 8

*Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978)......................................................... 4

*Morgan v. Cty. of Nassau*, 720 F.Supp.2d 229 (E.D.N.Y. 2010) ...................................... 9

*Oklahoma City v. Tuttle*, 471 U.S. 808 (1985) (plurality op.) ........................................... 7

*Rothstein v. UBS AG,* 708 F.3d 82 (2d Cir. 2013) ................................................................4

*Seiden v. Sonstein,* 127 A.D.3d 1158 (2d Dept. 2015) ......................................................16

*Snider v. Dylag*, 188 F.3d 51 (2d Cir. 1999) ....................................................................10

*Spear v. Town of W. Hartford*, 954 F.2d 63 (2d Cir. 1992) ..............................................12

*Spring v. Allegany-Limestone Cent. Sch. Dist.*,
138 F. Supp. 3d 282 (W.D.N.Y. 2015) vacated in part on unrelated grounds,
655 Fed. App'x. 25 (2d Cir. 2016) ....................................................................................10

*Valdez v. City of New York*, 18 N.Y.3d 69 (2011) ............................................................18

*Van de Kamp v. Goldstein*, 555 U.S. 335 (2009) ................................................................8

*Vann v. City of Rochester,* 18-cv-6464, 2019 WL 2646616
(W.D.N.Y. June 27, 2019) ..................................................................................................7

*Velez v. City of N.Y.*, 730 F.3d 128 (2d Cir. 2013) ..........................................................16

*Victory v. Pataki*, 814 F.3d 47 (2d Cir. 2016) ................................................................10

*Vossler v. Phasecom Am., Inc.*, No. 04-CV-128S, 2004 WL 1628903
(W.D.N.Y. July 19, 2004) ....................................................................................................4

*Williams v. Town of Greenburgh*, 535 F.3d 71 (2d Cir. 2008) ........................................12

**Statutes**

42 U.S.C. § 1983 ................................................................................................ *passim*

42 U.S.C. § 1985 ................................................................................................12

Fed. R. Civ. P. Rule 8 ..........................................................................................3

Fed. R. Civ. P. Rule 12 ....................................................................................1, 3

## PRELIMINARY STATEMENT

Defendants the County of Monroe (the "County"), Sheriff Todd Baxter and "Richard Roes" 1-200 (purportedly Monroe County Sheriff's deputies) (together, the "County Defendants") seek to dismiss the Plaintiff's First Amended Complaint (the "Complaint") in its entirety and with prejudice, pursuant to Fed. R. Civ. P. Rule 12(b)(6), as against the County Defendants, based on a failure to state a cause of action against these parties.

## THE PLEADINGS

Plaintiff Edward Fitzgerald brought this lawsuit against the City of Rochester, the County, Sheriff Baxter, one individually-named Rochester Police Department ("RPD") officer and John Does who are purportedly RPD officers and/or Monroe County Sheriff's deputies. Plaintiff alleges the following Claims for Relief against the County Defendants: municipal liability, excessive force, assault and battery, First Amendment violations, failure to intervene, and three claims of negligence. Each of these Claims for Relief are the subject of this motion.

Plaintiff's counsel has brought a number of lawsuits stemming from protests that occurred in the City of Rochester in 2020. *See, e.g., Hall, et al. v. Warren, et al.,* Case No. 21-cv-6296. In these lawsuits, the focus has been on the City of Rochester and the RPD. Many of these cases have alleged a long history of purportedly unconstitutional policies, practices, and customs, on the part of the City and the RPD. Similarly, throughout all of these complaints the Sheriff and his deputies have been relegated to the status of an afterthought, with nowhere near the historical depth or focus on details or past protests or past relevant policies that the Plaintiffs have devoted to their claims against the City. The clear basis and purpose of these lawsuits has everything to do with the City and RPD, and virtually nothing to do with the Sheriff and his deputies.

With respect to Plaintiff, his factual allegations against the Sheriff's deputies are *de minimus*, especially when compared with those against the RPD. For instance, on the night of September 4, 2020, Plaintiff initially generally alleges that RPD officers and Sheriff's Deputies "kettled" protesters onto the Court Street Bridge and "attacked" protesters with crowd-dispersal weapons. (Comp. ¶18.) However, Plaintiff then specifically explains that, "RPD officers" issued the dispersal orders and "began indiscriminately firing pepper balls into the crowd." (Comp. ¶24.) It was here that Plaintiff was allegedly shot in the fact with pepper balls – clearly not by a Sheriff's deputy. (Comp. ¶23.) Plaintiff then alleges that specifically-identified RPD Officer Romano, along with "RPD Officers and/or Sheriff's Deputies" ripped his umbrella from his hands and shot him in the face with a pepper ball. (Comp. ¶¶ 28-29.)

Indeed, it is clear that Plaintiff's allegations lend toward a single actor: Plaintiff alleges that he was "pushed" and his umbrella was "ripped" from his hands, and he was shot in the face "with a pepper ball from point-blank range." (Comp. ¶28.) And consistent with this, Plaintiff names RPD Officer Romano and alleged that he committed these acts. However, in an all-too-familiar tactic, Plaintiff throws in the general allegation that unnamed and unidentified "RPD Officers and/or Sheriff's Deputies" somehow also committed the same acts that RPD Officer Romano is alleged to have committed.

Additionally, like all of the other protest-related lawsuits, throughout Plaintiff's Complaint the Sheriff and his deputies are almost an afterthought. The Complaint alleges incidents of purportedly "unreasonable and discriminatory use of force" on the part of the RPD going back over a decade. (Comp. ¶58.) In contrast, unable to make any such allegations against the Sheriff or his deputies, Plaintiff makes the absurd and implausible allegation that a Hazard Mitigation Plan

created by the Monroe County Office of Public Safety is actually a training policy utilized by the Sheriff, which is clearly is not. (Comp. ¶¶ 70-80.)

Moreover, the allegations against the Sheriff's deputies have consistently been general and vague, and such is continued in Plaintiff's Complaint. No particular act is imputed to any deputy, nor is any deputy identified or described in any way. Like many of the related complaints, Plaintiff is grasping at straws in an unsuccessful attempt to make allegations against the Sheriff and his deputies. Plaintiff's bare allegations, unsubstantiated by specific facts, fail to establish any non-speculative basis for relief. With that in mind, and for the reasons set forth below, the Complaint should be dismissed in its entirety, as against the County, the Sheriff, and his deputies, with prejudice.

## **ARGUMENT**

### I.  **Standard for Dismissal Pursuant to Fed. R. Civ. P. 12(b)(6)**

Under Rule 8(a)(2), a pleading must contain "a short and plain statement of the claim showing the pleader is entitled to relief." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). However, "factual allegations must be enough to raise a right to relief above the speculative level." *Id.* Thus, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.* at 570. "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action does not suffice. … Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). "Only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 678 (internal citations omitted).

Significantly, though Rule 8 does not require excessive detail to meet pleading standards, "a civil rights complaint *must still allege facts*." *Houghton v. Cardone*, 295 F. Supp. 2d 268, 276

(W.D.N.Y. 2003) (emphasis in original); *Vossler v. Phasecom Am., Inc.*, No. 04-CV-128S, 2004 WL 1628903 at *1 (W.D.N.Y. July 19, 2004) (finding that Rule 8 pleading requirement not met when, "no specifics are provided concerning the conduct that allegedly constituted" the legal claim alleged in the complaint).

It is well established that in addressing a motion to dismiss, a court is "not required to credit conclusory allegations or legal conclusions couched as factual allegations." *Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir. 2013); *see also Cavico v. Steuben Cty. Jail,* 18-cv-6329, 2018 WL 11317396, at *3 (W.D.N.Y. Aug. 27, 2018) ("it is well established that general, vague and conclusory claims of constitutional violations fail to state a claim upon which relief can be granted under § 1983").

## II.   Second Claim for Relief – Municipal Liability Against the County and Sheriff Baxter

Plaintiff's Second Claim for Relief alleges a violation of Plaintiff's First, Fourth, and Fourteenth Amendment rights on the part of the County and Sheriff Baxter.

A §1983 claim against a municipality or other local government entity cannot be based on the doctrine of *respondeat superior, i.e.,* liability solely because the municipality or entity employs a tortfeasor. *Monell v. Dept. of Soc. Serv. of City of New York*, 436 U.S. 658 (1978). Such liability can only be found when the alleged constitutional deprivation results from an official policy or informal custom adopted by the municipality or entity. *Id.*

Thus, to defeat the present motion, Plaintiff's pleading must set forth the existence of either an official policy or informal custom that has been adopted by the County or Sheriff. Absent that, Plaintiff must plead a failure to train, supervise, or discipline on the part of the municipality. This requires meeting the pleading standard of "deliberate indifference" by showing a "pattern of

similar constitutional violations by untrained employees." *Connick v. Thompson,* 563 U.S. 51, 61

(2011). Plaintiff has failed to meet either pleading burden.

### A.   Failure to Plead Policy or Custom

The municipal policy that is alleged to have been used by the County and/or Sheriff is a

document called Hazard Mitigation Plan. (Comp. ¶¶ 70-80.) This allegation is wildly misplaced

and plainly does not establish a plausible basis for relief in this case.

On its face, the Hazard Mitigation Plan is not even remotely what Plaintiff alleges it to be.

The introduction to the Hazard Mitigation Plan explains the Plan and its purpose:

> In response to the requirements of the Disaster Mitigation Act of 2000 (DMA
> 2000), Monroe County (and its towns and villages) developed this All-Hazard
> Mitigation Plan (HMP), which is an update of the 2011 Monroe County
> MultiJurisdictional HMP. DMA 2000 amends the Stafford Act and is designed to
> improve planning for, response to, and recovery from disasters by requiring state
> and local entities to implement pre-disaster mitigation planning, and develop
> HMPs. The Federal Emergency Management Agency (FEMA) has issued
> guidelines for HMPs, and the New York State Division of Homeland Security and
> Emergency Services (NYS DHSES) also supports plan development for
> jurisdictions in New York State.
>
> Specifically, DMA 2000 requires that states, with support from local governmental
> agencies, update HMPs on a 5-year basis to prepare for and reduce the potential
> impacts of natural hazards. DMA 2000 is intended to facilitate cooperation between
> state and local authorities, prompting them to work together. This enhanced
> planning process will better enable local and state governments to articulate
> accurate needs for mitigation, resulting in faster allocation of funding and more
> effective risk reduction projects.

Available     at:     *https://www.monroecounty.gov/files/oem/2017/04%20Section%201%20-%20*

*Introduction%20Apr17.pdf*.[1]

---

[1] The Complaint quotes from and relies upon the Hazard Mitigation Plan. (Comp. ¶¶ 70-80.) The
contents of that plan may therefore be taken into account on this motion in determining whether
Plaintiff has pled a plausible basis for relief. *Chambers v. Time Warner, Inc.,* 282 F.3d 147, 152-
53 (2d Cir. 2002) (on motion to dismiss, complaint is deemed to include a document incorporated
by reference or made integral to the complaint because the complaint "relies heavily upon its terms
and effect"); *see also Avgerinos v. Palmyra-Macedon Cent. Sch. Dist.,* 690 F. Supp. 2d 115, 123-

This clearly has nothing to do with training for Sheriff's deputies for responding to a protest. The specific part of the Hazard Mitigation Plan quoted by the Plaintiffs, § 5.4.10, "Risk Assessment - Civil Unrest", does not in any way encourage or even deal with use of force in response to protests. *See* [https://www.monroecounty.gov/files/oem/2017/20%20Section%205.4.10-Civil%20Unrest%20Apr17.pdf](https://www.monroecounty.gov/files/oem/2017/20%20Section%205.4.10-Civil%20Unrest%20Apr17.pdf). The Hazard Mitigation Plan – and in particular the *"Risk Assessment,"* – simply makes the observation that sometimes, in some cases, peaceful protests can become violent. This clearly does not provide adequate support for the allegation that this document is the basis of the Sheriff's alleged improper training of his deputies.

Furthermore, the Hazard Mitigation Plan is created by Monroe County's Office of Emergency Management, which is directed by the County's Deputy Director of Public Safety & County Emergency Manager, a position appointed by the County Executive. Under the Monroe County Charter, the County Executive has supervision and control over County agencies with heads appointed by the County Executive only, not independent elected officials such as the Sheriff. Monroe County Charter Art. III, §C3-2(A)(7); *see also Jeffes v. Barnes,* 208 F.3d 49, 57 (2d Cir. 2000) (whether municipal officer is policymaker in a given area is question of law for the court). Therefore the County's Hazard Mitigation Plan, promulgated by the County Office of Emergency Management, cannot be said to be a policy of the Sheriff or applicable to Sheriff's deputies in their training.

The Hazard Mitigation Plan is a document created by the County's Office of Emergency Management, pursuant to statutory obligations that, in part, discusses potential risks to the County, including that of possible civil unrest – both peaceful and violent. Indeed, the introductory

_____

24 (W.D.N.Y. 2010) (collecting cases).  Furthermore, the Plan is a matter of public record of which this Court may take judicial notice. *Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012).

paragraph to the Risk Assessment – Civil Unrest section states, "[t]he following section presents the hazard profile … and vulnerability assessment for the civil unrest hazard in Monroe County." There is no good faith or plausible basis to assert that this document is used to train Sheriff's deputies in protest response.

Thus, Plaintiff's allegation that, "prior to 2020 and at all times relevant herein, the County and Baxter had implemented the Hazard Mitigation Plan, and trained Sheriff's Deputies in accordance with its mandates" (Comp. ¶74) is absurd and plainly implausible, as the Hazard Mitigation Plan is on its face neither a policy, nor is it created by or in any way related to the Sheriff and the training of his deputies.

Put simply, Plaintiff's allegations that this document is policy of the County or Sheriff, that the Sheriff's deputies are trained improperly based on this document, and that the County or Sheriff is therefore liable to Plaintiff do not pass the straight-face test, fail to establish a plausible basis for relief, and should be rejected by the Court.

### B.  Failure to Plead "Failure to Train" Claim

Plaintiff also fails to allege facts to support a claim that the County or Sheriff failed to train, supervise, or discipline Sheriff's deputies.

A plaintiff's burden is high with failure to train claims. The Supreme Court has cautioned that "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Vann v. City of Rochester*, 18-cv-6464, 2019 WL 2646616 at *7 (W.D.N.Y. June 27, 2019), *quoting Connick*, 563 U.S. at 61, *citing Oklahoma City v. Tuttle*, 471 U.S. 808, 822-23 (1985) (plurality op.) ("a 'policy' of 'inadequate training' is "far more nebulous, and a good deal further removed from the constitutional violation, than was the policy in *Monell*");

*Van de Kamp v. Goldstein*, 555 U.S. 335, 343-44, 347-48 (2009) (failure to train or supervise claim against a municipal entity … is ill-advised and almost universally prohibited).

To satisfy §1983, "a municipality's failure to train its employees in a relevant respect must amount to 'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact.'" *Connick*, 563 U.S. at 61. (quotation omitted; brackets in original.) To meet the "stringent standard" of demonstrating deliberate indifference, "[a] pattern of similar constitutional violations by untrained employees is ordinarily necessary." *Id.* at 62 (quotation omitted.)

Thus, a failure to train claim requires a showing of "prior instances of unconstitutional conduct demonstrating that the county has ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury." *Miller v. Sanilac County*, 606 F.3d 240, 255 (6th Cir. 2010). Indeed, as the Supreme Court has found, "[w]ithout notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Connick*, 563 U.S. at 62.

Plaintiff has failed to meet his burden. There are no allegations, whatsoever, of prior instances where Sheriff's deputies committed unconstitutional acts to put the County or Sheriff on notice that there were any training deficiencies. This is contrasted with the allegations against the City and RPD, which set forth a number of prior instances where alleged unconstitutional conduct occurred in response to protests. (Comp. ¶58.) Clearly, Plaintiff has the ability to plead such, but has no facts to allege against the County or Sheriff. Without such allegations, the County or Sheriff, "can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Connick*, 563 U.S. at 62.

8

Based on the above, Plaintiff's Second Claim for Relief should be dismissed in its entirety.

## III.   Third Claim for Relief – §1983 Excessive Force

Plaintiff's Third Claim for Relief alleges excessive force in violation of the Fourth and Fourteenth Amendments against RPD Officer Romano and the John Doe/Richard Roe unnamed RPD Officers and Sheriff's Deputies.

"The Fourth Amendment protects individuals from the government's use of excessive force *when detaining or arresting individuals*." *Jones v. Parmley,* 465 F.3d 46, 61 (2d Cir. 2006) (emphasis added); *see also Morgan v. Cty. of Nassau,* 720 F. Supp. 2d 229, 237 (E.D.N.Y. 2010) ("Generally, the Second Circuit has held that courts should analyze an excessive force claim related to an arrest or seizure under the Fourth Amendment, and analyze all other excessive force claims under the Fourteenth Amendment"), citing *Hemphill v. Schott,* 141 F.3d 412, 418 (2d Cir. 1998). Plaintiff's Complaint contains no allegations that a Sheriff's deputy effectuated a detention or arrest of Plaintiff that would support a Fourth Amendment violation.

Additionally, Plaintiff's Complaint contains impermissible "group pleading" with respect to the Sheriff's deputies. As a general pleading requirement, "[a]lthough Federal Rule of Civil Procedure 8 does not demand that a complaint be a model of clarity or exhaustively present the facts alleged, it requires, at a minimum, that a complaint give each defendant fair notice of what the plaintiff's claim is and the ground upon which it rests." *Atuahene v. City of Hartford*, 10 Fed. Appx. 33, 34 (2d Cir. 2001) (internal quotation omitted).

Significantly, a complaint that "lump[s] all the defendants together in each claim and provid[es] no factual basis to distinguish their conduct ... fail[s] to satisfy this minimum standard." *Id.*; *see also Leneau v. Ponte*, No. 16-CV-776-GHW, 2018 WL 566456, at *15 (S.D.N.Y. Jan. 25, 2018) ("complaints that rely on group pleading and fail to differentiate as to

which defendant was involved in the alleged unlawful conduct are insufficient to state a claim")

(internal quotation omitted); *Adamou v. Cty. of Spotsylvania, Virginia*, No. 12-cv-7789, 2016 WL

1064608, at *11 (S.D.N.Y. Mar. 14, 2016) ("Pleadings that fail to differentiate as to which

defendant was involved in the alleged unlawful conduct are insufficient to state a claim").

Notably, the prohibition of "group pleading" applies to §1983 claims. *Spring v. Allegany-

Limestone Cent. Sch. Dist.*, 138 F. Supp. 3d 282, 293 (W.D.N.Y. 2015), *vacated in part on

unrelated grounds*, 655 Fed. Appx. 25 (2d Cir. 2016) ("Because the personal involvement of a

defendant is a prerequisite to an award of damages under §1983, a plaintiff cannot rely on a group

pleading against all defendants *without making specific individual factual allegations*") (emphasis

added).

A plaintiff seeking relief under §1983, "must allege that (1) the challenged conduct was

attributable to a person acting under color of state law, and (2) the conduct deprived the plaintiff

of a right guaranteed under the Constitution." *Snider v. Dylag*, 188 F.3d 51, 53 (2d Cir. 1999)

(citation omitted). Significantly, the *personal involvement* of defendants in alleged constitutional

deprivations is a prerequisite to an award of damages under §1983. *See Victory v. Pataki*, 814 F.3d

47, 67 (2d Cir. 2016).

Here, Plaintiff fails to allege the Sheriff's Deputies' personal involvement in any alleged

constitutional violations. No specific acts are alleged on the part of any Deputy, nor has any

individual Deputy been named, identified, or even described as having violated Plaintiff's

constitutional rights. Indeed, throughout the entirety of the Complaint, Plaintiff alleges only that

"RPD officers and/or Sheriff's Deputies" committed acts against him. In this manner of pleading,

Plaintiff impermissibly "lumps all the defendants together in each claim and provides no factual

basis to distinguish their conduct," thereby failing the "minimum standard for pleading." *Atuahene,* 10 Fed. Appx. 33.

Based on the above, Plaintiff's Third Claim for Relief should be dismissed as against the County Defendants.

## IV.   Fourth Claim for Relief – Assault and Battery

Plaintiff's Fourth Claim for Relief alleges assault and battery under New York State law. Specifically, Plaintiff alleges that RPD Officer Romano, RPD Officers "and/or" Sheriff's Deputies battered him by subjecting him to various chemical weapons and also that he was shot in the fact with a pepper ball. (Comp. ¶¶ 102-103.)

This Claim for Relief should be dismissed for one of the same reasons as the Claim for Relief alleging excessive force – Plaintiff has failed to allege that any individual Sheriff's Deputy was actually involved in any use of force against him.

"Federal excessive force claims and state law assault and battery claims against police officers are nearly identical." *Graham v. City of New York*, 928 F. Supp. 2d 610, 624–25 (E.D.N.Y. 2013), citing *Humphrey v. Landers,* 344 Fed.Appx. 686, 688 (2d Cir. 2009);  *see also Lin v. Cty. of Monroe*, 66 F. Supp. 3d 341, 355-56 (W.D.N.Y. 2014) (dismissing claims, including for assault and battery, against Deputy who was not present at the time of the use of force).

 "In the absence of factual allegations establishing that [the Sheriff's deputies were] personally involved in the alleged state law torts of assault, battery, false arrest, intentional infliction of emotional distress and negligent infliction of emotional distress, these claims . . . also fail to state a cause of action under New York law." *De Ratafia v. Cty. of Columbia*, 13-cv-174, 2013 WL 5423871, at *9 (N.D.N.Y. Sept. 26, 2013); *see also Boyler v. City of Lackawanna*, 287 F. Supp. 3d 308, 326 (W.D.N.Y. 2018) *aff'd,* 765 F. App'x 493 (2d Cir. 2019) ("Accordingly,

because there is no evidence that the Individual Defendants effectuated Plaintiff's arrest . . . the fact that Plaintiff was arrested fails to raise an issue of material fact in support of his common law assault and battery claims).

As has been stated above, no specific act is alleged on the part of any Sheriff's Deputy, and no individual Sheriff's Deputy has been named, identified, or even described as having been violent toward Plaintiff.

Based on the foregoing, Plaintiffs' Fourth Claim for Relief should be dismissed.

## V.  Fifth Claim For Relief – §1983 First Amendment

Plaintiff's Fifth Claim for Relief alleges a violation of Plaintiff's First Amendment rights – including retaliation – against all defendants.[2]

> To state a claim under Section 1983, a plaintiff must allege facts indicating that some official action has caused the plaintiff to be deprived of his or her constitutional rights—in other words, there is an injury requirement to state the claim. . . . *[P]laintiffs who allege a violation of their right to free speech must prove that official conduct actually deprived them of that right.* To prove this deprivation, [Plaintiffs] must come forward with evidence showing either that (1) defendants silenced [them] or (2) 'defendants' actions had some actual, non-speculative chilling effect on [their] speech.

*Williams v. Town of Greenburgh*, 535 F.3d 71, 78 (2d Cir. 2008) (emphasis added) (internal citations omitted; quoting *Colombo v. O'Connell,* 310 F.3d 115, 117 (2d Cir. 2002); citing *Spear v. Town of W. Hartford,* 954 F.2d 63, 68 (2d Cir. 1992) (upholding dismissal where complaint failed "to show that defendants 'inhibited him in the exercise of his First Amendment freedoms'"); *see also Brinn v. Syosset Pub. Libr.,* 624 F. App'x 47, 49 (2d Cir. 2015) (summary order).

---

[2] Plaintiff's Claim for Relief states that it also alleges a conspiracy (Comp. ¶113), but the Claim for Relief is expressly brought pursuant to 42 U.S.C. §1983 and not 42 U.S.C. §1985. Accordingly, Plaintiff's purported conspiracy claim is not addressed herein. If the Court were to determine that a conspiracy claim is attempted to be pled, it is the Sheriff and his deputies' position that no elements of a conspiracy pursuant to §1985 are pled in Plaintiff's Fifth Claim for Relief and any claim of conspiracy should, therefore, be dismissed.

In the protest context, First Amendment claims typically arise as a "retaliation" claim. "To plead a First Amendment retaliation claim a plaintiff must show: (1) he has a right protected by the First Amendment; (2) the defendant's actions were motivated or substantially caused by his exercise of that right; and (3) the defendant's actions caused him some injury." *Dorsett v. Cty. of Nassau,* 732 F.3d 157, 160 (2d Cir. 2013).

Significantly, "[i]n order to survive a motion to dismiss, a claim of retaliation under Section 1983 'must be supported by specific and detailed factual allegations, not stated in wholly conclusory terms.'" *MacPherson v. Town of Southampton,* 738 F. Supp. 2d 353, 369 (E.D.N.Y. 2010), quoting *Friedl v. City of New York*, 210 F.3d 79, 85 (2d Cir. 2000).

> An essential element of a Section 1983 claim, including a claim of retaliation in violation of the First Amendment, is that some official action has caused the plaintiff to be deprived of his or her constitutional rights – in other words, there is an injury requirement to state the claim. … The Second Circuit has explained that plaintiffs who allege a violation of their right to free speech must provide that official conduct actually deprived them of that right. Therefore, to properly allege a claim for First Amendment retaliation, a plaintiff must show that his First Amendment rights were actually chilled.

*MacPherson,* 738 F. Supp. 2d at 369 (internal citations omitted).

Here, Plaintiff failed to allege that the Sheriff or his deputies retaliated against him for exercising his free speech rights, *i.e.,* retaliatory animus. *See Kuczinski,* 352 F. Supp. 3d at 321-22 ("A plaintiff asserting a violation of [free speech] . . . provisions must allege that the plaintiff (1) has engaged in a protected First Amendment activity, (2) suffered an adverse action, and (3) *there was a causal connection between the protected activity and the adverse action*." (emphasis added)).

The Complaint is clear that all of the protests in question were directed at the policies and actions and history of the Rochester Police Department (Comp. ¶¶ 15-16). Plaintiff has not credibly

alleged that the Sheriff or his deputies had any reason to retaliate against him or that there was any causal connection between the protected activity and the adverse action.

The Claim for Relief also fails as against the Sheriff's Deputies on similar grounds as Plaintiff's excessive force claim – the use of impermissible group pleading. The Court is respectfully directed to pages 9-10 above, which set forth the reasons why group pleading in support of §1983 claims of constitutional violation are grounds for dismissal of the pleading. Here, the Complaint fails to make out a violation of Plaintiff's First Amendment rights against the Sheriff's deputies because it fails to specifically plead any direct involvement by any deputy in the alleged violations and impermissibly group pleads against the deputies.

For the above reasons, Plaintiff's Fifth Claim for Relief should be dismissed as against the County Defendants.

## VI.   Sixth Claim for Relief – §1983 Failure to Intervene

In his Sixth Claim for Relief, Plaintiff alleges that RPD officers and/or Sheriff's deputies failed to intervene in the alleged violation of Plaintiff's constitutional rights. (Comp. ¶¶ 125-129.) This Claim for Relief of "failure to intervene" should be dismissed as to the County Defendants for the same reasons as with the other §1983 claims above – Plaintiff has failed to allege that any individual witnessed any actual violation of rights or had any realistic opportunity to intervene in any violation of rights.

"It is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Case v. City of New York*, 233 F. Supp. 372, 401–03 (S.D.N.Y. 2017), quoting *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994):

An officer who fails to intercede is liable for the preventable harm caused by the actions of the other officers where that officer observes or has reason to know: (1)

14

that excessive force is being used, (2) that a citizen has been unjustifiably arrested or (3) that any constitutional violation has been committed by a law enforcement official. However, in order for liability to attach, there must have been a realistic opportunity to intervene to prevent the harm from occurring.

*Id.*

Here, Plaintiff has failed to plausibly allege any of the County Defendants actually witnessed any violation of Plaintiff's rights and similarly failed to allege that any of the County Defendants had a realistic opportunity to intervene in any alleged violations. The vague allegations that "RPD officers and/or Sheriff's deputies" acted against Plaintiff provide no plausible allegation that a County Defendant was actually present or witnessed any alleged act against Plaintiff. Compare this with Plaintiff having named an individual RPD Officer as having allegedly committed all of the acts against him. (Comp. ¶¶ 27-29.)

Based on the above, Plaintiff's Sixth Claim for Relief, for failure to intervene, should be dismissed.

## VII.  <u>Seventh Claim for Relief – Negligent Training, Supervision and Discipline</u>

Plaintiff's Seventh Claim for Relief alleges negligence against Sheriff Baxter, and specifically that the Sheriff was negligent in the training, supervision, and discipline of his Deputies in overseeing their response to the protests.

First, to the extent the Claim for Relief is brought against the Sheriff in his individual capacity, it must be dismissed. *See Girard v. Howard,* 19-cv-673S, 2021 WL 1737758, at *9 (W.D.N.Y. May 3, 2021) (dismissing personal capacity claim against sheriff when alleged "personal involvement" arose from sheriff's official duties, *e.g., setting policy*) (emphasis added).

Though a Sheriff is not liable for the torts of his or her individual deputies, New York law permits a claim of negligence against a Sheriff where it is shown that deputies lacked proper

training in law enforcement techniques and that direct supervision by the Sheriff could have altered the consequences of the deputies' actions. *Barr v. Albany County,* 50 N.Y.2d 247, 258 (1980).

But this claim survives only if it is shown that the alleged tortfeasor acted outside the scope of their employment. *See Velez v. City of N.Y.,* 730 F.3d 128, 136 (2d Cir. 2013) ("to maintain a claim against a municipal employer for the negligent hiring, training, and retention of a tortfeasor under New York law, a plaintiff must show that the employee acted outside the scope of her employment") (quotations omitted). Moreover, a plaintiff must show that the employer, "was aware of, or reasonably should have foreseen, the [deputies'] propensity to commit such act[s]." *Lamb v. Baker,* 152 A.D.3d 1230, 1231 (4th Dept. 2017), quoting *Seiden v. Sonstein,* 127 A.D.3d 1158, 1160-61 (2d Dept. 2015) ("An employer may be liable for a claim of negligent hiring or supervision if an employee commits an independent act of negligence outside the scope of employment and the employer was aware of, or reasonably should have foreseen, the employee's propensity to commit such an act") (quotations omitted).

Plaintiff has failed to meet these pleading burdens. First, Plaintiff failed to allege that the Sheriff's Deputies engaged in independent acts of negligence outside the scope of their employment. In fact, Plaintiff affirmatively alleges that, "[a]t all relevant times, [the Sheriff's deputies] *were acting within the scope of their employment* with the County and under Sheriff Baxter… ." (Comp. ¶7.) (Emphasis added.)

Moreover, the Complaint is devoid of allegations, "sufficient to infer that . . . [Sheriff Baxter] knew of the [Sheriff's deputies'] ... propensity to act in the manner alleged." *See Edrei v. City of New York,* 254 F. Supp. 3d 565, 583-84 (S.D.N.Y. 2017), *aff'd sub nom. Edrei v. Maguire,* 892 F.3d 525 (2d Cir. 2018). There is no indication that, for example, Sheriff Baxter ever received prior complaints involving Sheriff's Deputies' use of crowd control measures or "chemical or

militarized" weapons, or that there have been prior instances of Sheriff's Deputies using inappropriate crowd control measures.

This is juxtaposed with Plaintiff's allegations against the RPD, which describe multiple prior instances of alleged improper acts during public protests. (Comp. ¶58.)

Absent such allegations with respect to Sheriff's Deputies, Plaintiff's claim for negligent supervision and training against Sheriff Baxter must be dismissed. *See id.* (dismissing negligent training and supervision claim where plaintiffs did not allege "that defendant [employer] ... knew of the defendant officers' propensity to act in the manner alleged, namely using a powerful sound magnifier in an unnecessarily forceful manner [during a protest]").

This Claim for Relief should also be dismissed because the Complaint alleges that Sheriff Baxter trained his deputies improperly based on a document that is not what Plaintiff attempts to claim it is. Specifically, Plaintiff's negligence claim is based on the Sheriff's alleged reliance upon a document called a Hazard Mitigation Plan in training his deputies. (Comp. ¶¶ 70-80.) This allegation is wildly misplaced and demonstrably false.

The Court is respectfully referred to pages 5-7 above for an in depth discussion on the Hazard Mitigation Plan and the irrefutable fact that, on its face, it is not a policy that is used in the training of Sheriff's Deputies, and Plaintiff's allegations to the contrary do not establish a plausible basis for relief.

Based on the above, Plaintiff's Claim for Relief alleging a failure to train, supervise, or discipline against Sheriff Baxter should be dismissed.

## VIII.   <u>Eighth Claim for Relief – Negligent Planning of Protest Response</u>

Plaintiff's Eighth Claim for Relief alleges negligence against Sheriff Baxter in his planning of the Sheriff's Deputies' protest response. Plaintiff has failed to plead this Claim for Relief by

failing to sufficiently allege the existence of a special duty between the Sheriff and Plaintiff, as is required under New York law.

"[A]n agency of government is not liable for the negligent performance of a governmental function unless there existed 'a special duty to the injured person, in contrast to a general duty owed to the public.'" *Bryant,* 267 F.Supp.3d at 479, quoting *McLean v. City of N.Y.,* 12 N.Y.3d 194, 199 (2009). "Under the public duty rule, although a municipality owes a general duty to the public at large to furnish police protection, this does not create a duty of care running to a specific individual sufficient to support a negligence claim, unless the facts demonstrate that a special duty was created." *Valdez v. City of N.Y.,* 18 N.Y.3d 69, 75 (2011).

A special duty requires a "special relationship between the plaintiff and the governmental entity." *McLean,* 12 N.Y.3d at 199.

> A special relationship can be formed in three ways: (1) when the municipality violates a statutory duty enacted for the benefit of a particular class of persons; (2) when it voluntarily assumes a duty that generates justifiable reliance by the person who benefits from the duty; or (3) when the municipality assumes positive direction and control in the face of a known, blatant and dangerous safety violation.

*McLean,* 12 N.Y.3d at 199.

Plaintiff bears the burden of pleading and proving the existence of, "a special duty of care to the injured party because duty is an essential element of the negligence claim itself." *Applewhite v. Accuhealth, Inc.,* 21 N.Y.3d 420, 426 (2013). Here, Plaintiff has alleged that the Sheriff

> had a special duty to ensure that the rights of Plaintiff and other protesters to free speech, expression and to assemble under the First Amendment to the United States Constitution, and Article I, section 8 of the New York State Constitution, were not violated, and that protesters were not assaulted, battered, subjected to excessive force and/or falsely arrested by law enforcement.

(Comp. ¶140.)

This fails to plead a special duty under New York law. There is no mention of a statutory duty enacted for the benefit of a particular class of persons, no allegations that the Sheriff voluntarily assumed a duty that Plaintiff justifiably relied upon, or an assumption of direction or control in the face of a known, blatant and dangerous safety violation. *See McLean,* 12 N.Y.3d at 199. Rather, Plaintiff alleges only that the Sheriff owed a general duty to not violate the constitutional rights of the public of people in the streets of Rochester. That is insufficient to establish a special duty; and any violation of the purported "duty" that Plaintiff alleges is properly brought as a claim of violation of constitutional rights, and *not* as a negligence claim.

Absent a special duty, Plaintiff's claim must be dismissed. "In situations where the plaintiff fails to meet this burden [of pleading a special duty], the analysis ends and liability may not be imputed to the municipality that acted in a governmental capacity." *Applewhite,* 21 N.Y.3d at 426; *see also Bryant,* 267 F.Supp.3d at 479 (dismissing negligence claims against police chief and John Doe police officers for failure to plead special duty).

Accordingly, Plaintiff's Eighth Claim for Relief should be dismissed in its entirety.

## IX.  Eleventh Claim for Relief – Negligence

Plaintiff's Eleventh Claim for Relief alleges negligence against the unnamed RPD officers and Sheriff's Deputies in their response to the protests.

First, this Claim for Relief should be dismissed because it improperly contradicts the intentional conduct also alleged in Plaintiff's Complaint.

> Defendants contend that because Plaintiffs have alleged intentional conduct on the part of Defendants [in addition to a common law negligence claim] they cannot also allege negligen[t] conduct for the same action. Plaintiffs [*sic*] are correct: under New York State law, "when a plaintiff brings excessive force . . . claims which are premised upon a defendant's allegedly intentional conduct, a negligence claim with respect to the same conduct will not lie."

*Edrei v. City of New York,* 254 F.Supp.3d 582-83, quoting *Clayton v. City of Poughkeepsie,* 06-

cv-4881, 2007 WL 2154196, at *6 (S.D.N.Y. June 21, 2007). At the very least, to the extent Plaintiff's claims alleging intentional conduct survive this motion, this Claim for Relief must then be dismissed.

Additionally, like Plaintiff's Eleventh Claim for Relief against Sheriff Baxter (addressed immediately above), this Claim for Relief should be dismissed for failure to plead a special duty to support a claim for negligence. Plaintiff alleges that Sheriff's Deputies had two distinct duties: to permit protesters to engage in First Amendment activities and protect them from harm or physical violence (Comp. ¶176) and to not use force against any individual protester in the absence of individualized cause or legal justification. (Comp. ¶177.) Neither of these establish a special duty under New York law. *See McLean,* 12 N.Y.3d at 199. Absent such a special duty, Plaintiff's negligence Claim for Relief must be dismissed. *Applewhite,* 21 N.Y.3d at 426; *Bryant,* 267 F.Supp.3d at 479.

This Claim for Relief should also be dismissed as against the unnamed Sheriff's Deputies because Plaintiff has failed to make out the elements of a negligence cause of action.

> To state a claim for negligence, under New York Law a plaintiff must show: '(i) a duty owed to the plaintiff by the defendant; (ii) breach of that duty; and (iii) injury substantially caused by that breach.'

*Edrei v. City of New York*, 254 F. Supp. 3d 582-583, quoting *Lombard v. Booz–Allen & Hamilton, Inc.*, 280 F.3d 209, 215 (2d Cir. 2002). As with his other claims against the Sheriff's Deputies, Plaintiff has simply failed to make out these elements as to any individual Deputy. Instead, Plaintiff merely alleges that an unknown number of unnamed and unidentified RPD officers and Sheriff's Deputies committed negligent acts against Plaintiff. (Comp. ¶¶ 178-180.)

Not only does this fail to plead the elements of negligence running from any Sheriff's Deputy to Plaintiff, but it also fails to meet minimal notice pleading standards as to any Sheriff's Deputy. *See Bell Atl. Corp. v. Twombly,* 550 U.S. 544; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Accordingly, Plaintiff's Eleventh Claim for Relief should be dismissed as against the Sheriff's Deputies.

## **CONCLUSION**

Plaintiff has failed to meet fundamental pleading requirements for his claims against the County Defendants. The Court is therefore respectfully urged to dismiss the Complaint in its entirety as to these parties.

Dated: March 31, 2022                    RESPECTFULLY SUBMITTED,

John P. Bringewatt, Monroe County Attorney
*Attorney for the County Defendants*

By: s/ *Maria E. Rodi*
Maria E. Rodi
Adam M. Clark
Deputy County Attorneys
307 County Office Building, 39 W. Main Street
Rochester, New York 14614
585.753.1495
mariarodi@monroecounty.gov